**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **TASHAWN K. HUNTER,** | : | |
| **Plaintiff** | : | **CIVIL ACTION NO. 3:24-1870** |
| **v.** | : | **(JUDGE MANNION)** |
| **PENNSYLVANIA DEPARTMENT OF CORRECTIONS**, *et al.,* | : | |
| | : | |
| **Defendants.** | | |

## <u>MEMORANDUM</u>

Currently before the Court are *pro se* Plaintiff's application for leave to proceed *in forma pauperis* and complaint in which he asserts claims against Defendants for due process violations under 42 U.S.C. §1983 and for state-law defamation. These claims arise out of the issuance of two (2) misconducts against him while he has been incarcerated in state prison. For the reasons set forth below, the Court will grant Plaintiff leave to proceed *in forma pauperis* and dismiss the complaint without providing Plaintiff with leave to amend.

## I.   BACKGROUND

*Pro se* Plaintiff Tashawn K. Hunter ("Hunter"), a convicted state prisoner, commenced this action by filing a complaint, an application for leave to proceed *in forma pauperis* ("IFP Application"), and an uncertified

prisoner trust fund account statement, all of which the Clerk of Court docketed on October 29, 2024. (Docs. 1–3.) Because Hunter's account statement did not comply with 28 U.S.C. §1915(a)(2) insofar as it was uncertified,[1] an Administrative Order was entered directing the Warden of Pennsylvania State Correctional Institution Mahanoy ("SCI Mahanoy"), the place in which Hunter is currently incarcerated, to file a certified account statement with the Clerk of Court. (Doc. 5.) The Clerk of Court docketed Hunter's certified account statement on November 7, 2024. (Doc. 6.)

In his complaint, Hunter names as Defendants: (1) the Commonwealth of Pennsylvania Department of Corrections ("DOC"); (2) Superintendent Mason of SCI Mahanoy ("Mason"); (3) Dennis Wiederhold ("Wiederhold"), a DOC hearing examiner; and Jane Doe hearing examiner ("Doe"). (Doc. 1 at 1.) Regarding his factual allegations and legal claims against these

---

[1] Section 1915(a)(2) provides as follows:

A prisoner seeking to bring a civil action . . . without prepayment of fees or security therefor . . . shall submit a certified copy of the trust fund account statement (or institutional equivalent) for the prisoner for the 6-month period immediately preceding the filing of the complaint . . ., obtained from the appropriate official of each prison at which the prisoner is or was confined.

28 U.S.C. §1915(a)(2).

Defendants, Hunter alleges that he was issued a misconduct for refusing to obey an order and for violating a rule or regulation on May 29, 2023. (*Id.* at 2.) This charged misconduct relates to his cellmate, Anthony Cooper ("Cooper"), placing cardboard into the "cells [sic] door windows." (*Id.*) Cooper received a similar misconduct. (*Id.*) Cooper admitted to the officer issuing the misconducts that he was responsible for the violation; yet, the officer still issued a misconduct to Hunter. (*Id.*)

On May 31, 2023, following an "informal resolution action," Cooper pleaded guilty to the misconduct charge. (*Id.*) Cooper received a sanction of fourteen (14) days' cell restriction for the misconduct. (*Id.*)

Instead of pursuing an informal resolution of his misconduct charge, Hunter requested a formal hearing because he would have the right to call witnesses per DOC policy. (*Id.*) On June 2, 2023, Doe held a video misconduct hearing; however, Doe refused Hunter's request to call Cooper as a witness during the hearing. (*Id.* at 3.) At the conclusion of the hearing, Doe found Hunter guilty of the misconduct charge. (*Id.*) This resulted in Hunter being "subjected to punitive segregation and denied parole." (*Id.* at 4.)

Hunter appealed from Doe's decision to the Program Committee, then to the Facility Manager, and finally to the "Chief Hearing [E]xaminer." (*Id.* at 3.) On each appeal, Doe's decision was upheld. (*Id.*)

On July 26, 2024, Hunter was issued another misconduct for refusing to obey an order and for failing to report to work. (*Id.*) This misconduct was issued despite Hunter having appeared for work at 10:00 a.m. and then being excused to leave after 1:00 p.m. due to "Juma religious services." (*Id.*)

On July 31, 2024, Hunter requested a formal hearing on his misconduct charge. (*Id.*) On August 7, 2024, Hunter had a formal hearing before Wiederhold. (*Id.*) Hunter asserts that Wiederhold denied his requests to call numerous witnesses because they were "[n]ot needed to determine guilt or innocence." (*Id.*) Wiederhold ultimately found Hunter guilty of failing to report to work. (*Id.*) As a result, Hunter was fired from his job "and his parole was taken back from him." (*Id.* at 4.)

On or about August 12, 2024, Hunter appealed from Wiederhold's decision to the Program Committee. (*Id.* at 3.) The Program Committee upheld Wiederhold's decision; however, Hunter did not receive a copy of the Program Committee's determination until October 3, 2024. (*Id.*) Hunter

claims that this left him "purposely time barred from further levels of appeal." (*Id.* at 4.)

Based on these factual allegations, Hunter asserts state-law claims for defamation against (1) Wiederhold and Doe for finding him guilty of misconduct and (2) Mason for "upholding [his] conviction knowing their [sic] was proof of his innocence." (*Id.* at 1, 4–5.) Hunter also asserts claims under Section 1983 against all Defendants in their official and individual capacities for violations of his due process rights under the Fourteenth Amendment to the United States Constitution. (*Id.*) He further appears to assert Section 1983 claims for an allegedly unconstitutional policy or practice under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978). (*Id.* at 4–5.) For relief, Hunter seeks a declaratory judgment, monetary damages, an injunction to stop prison officials from continuing with their unconstitutional policy or practice, and the expungement of his misconduct convictions from his prison records. (*Id.* at 6.)

## II.   THE IFP APPLICATION

Under 28 U.S.C. §1915(a)(1), a district court "may authorize the commencement . . . of any [civil action] . . . without prepayment of fees . . ., by a person who submits an affidavit that includes a statement of all assets

- 5 -

such prisoner possesses that the person is unable to pay such fees . . . ." 28

U.S.C. §1915(a)(1). This statute

> "is designed to ensure that indigent litigants have meaningful
> access to the federal courts." *Neitzke v. Williams*, 490 U.S. 319,
> 324, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). Specifically,
> Congress enacted the statute to ensure that administrative court
> costs and filing fees, both of which must be paid by everyone
> else who files a lawsuit, would not prevent indigent persons from
> pursuing meaningful litigation. [*Deutsch v. United States*, 67 F.3d
> 1080, 1084 (3d Cir. 1995).] Toward this end, §1915(a) allows a
> litigant to commence a civil or criminal action in federal court *in*
> *forma pauperis* by filing in good faith an affidavit stating, among
> other things, that [they are] unable to pay the costs of the lawsuit.
> *Neitzke*, 490 U.S. at 324, 109 S.Ct. 1827.

*Douris v. Middletown Twp.*, 293 F. App'x 130, 131–32 (3d Cir. 2008)

(unpublished) (footnote omitted).

A litigant can show that they are unable to pay the costs of the lawsuit

"based on a showing of indigence." *Deutsch*, 67 F.3d at 1084 n.5. The Third

Circuit Court of Appeals has not defined what it means to be indigent;

nevertheless, "[a] plaintiff need not 'be absolutely destitute to enjoy the

benefit of the statute.'" *Mauro v. N.J. Supreme Ct., Case Number 56,900*,

238 F. App'x 791, 793 (3d Cir. 2007) (unpublished) (quoting *Adkins v. E.I.*

*DuPont de Nemours & Co.*, 335 U.S. 331, 339 (1948)). Some district courts

have explained that all a litigant needs to show is that because of their

poverty, they cannot afford to pay for the costs of the litigation and provide

themselves with the necessities of life. *See, e.g.*, *Rewolinski v. Morgan*, 896 F. Supp. 879, 880 (E.D. Wis. 1995) ("An affidavit demonstrating that the petitioner cannot, because of his poverty, provide himself and any dependents with the necessities of life is sufficient."); *Jones v. State*, 893 F. Supp. 643, 646 (E.D. Tex. 1995) ("An affidavit to proceed *in forma pauperis* is sufficient if it states that one cannot, because of poverty, afford to pay for the costs of litigation and still provide for him- or herself and any dependents.").

Here, after reviewing the IFP Application and Hunter's certified prisoner account statement, it appears that he lacks the financial means to prepay the filing fee in this matter. Accordingly, the Court will grant the IFP Application and allow Hunter to proceed *in forma pauperis* in this action.[2]

## III.   LEGAL STANDARDS

### A.   Screening of *Pro Se* Complaints Under 28 U.S.C. §§1915A, 1915(e)(2)(B)

This Court must "review . . . a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of

---

[2] However, because Hunter is a prisoner, he is advised that he will be obligated to pay the filing fee in installments in accordance with the PLRA, regardless of the outcome of this action. *See* 28 U.S.C. §1915(b).

a governmental entity." 28 U.S.C. §1915A(a). If a complaint fails to state a claim upon which relief may be granted, the Court must dismiss the complaint. *See id.* §1915A(b)(1). The Court has a similar screening obligation regarding actions filed by prisoners proceeding *in forma pauperis*. *See id.* §1915(e)(2)(B)(ii) ("[T]he [C]ourt shall dismiss the case at any time if the [C]ourt determines that . . . the action or appeal . . . fails to state a claim on which relief may be granted . . . .").

In screening legal claims under Sections 1915A(b) and 1915(e)(2)(B), the Court applies the standard governing motions to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See, e.g.*, *Smithson v. Koons*, No. 15-cv-1757, 2017 WL 3016165, at *3 (M.D. Pa. June 26, 2017) ("The legal standard for dismissing a complaint for failure to state a claim under §1915A(b)(1) [and] §1915(e)(2)(B)(ii) . . . is the same as that for dismissing a complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure."), *report and recommendation adopted*, 2017 WL 3008559 (M.D. Pa. July 14, 2017). To avoid dismissal under Rule 12(b)(6), a plaintiff must set out "sufficient factual matter" in the complaint to show that their claims are facially plausible. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This plausibility standard requires more than a mere possibility that the defendant

is liable for the alleged misconduct. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).

When evaluating the plausibility of a complaint, the Court accepts as true all factual allegations and all reasonable inferences that can be drawn from those allegations, viewed in the light most favorable to the plaintiff. *See id.*; *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010). However, the Court must not accept legal conclusions as true, and "a formulaic recitation of the elements of a cause of action" will not survive a district court's screening under Section 1915A and 1915(e)(2). *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).

In addition, in the specific context of *pro se* prisoner litigation, the Court must be mindful that a document filed *pro se* is "to be liberally construed." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Higgs v. Att'y Gen.*, 655 F.3d 333, 339–40 (3d Cir. 2011) (explaining that "when presented for a pro se litigant, we have a special obligation to construe his complaint liberally" (citation and internal quotation marks omitted)). Therefore, a *pro se* complaint, "however inartfully pleaded," must be held to "less stringent

standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks omitted) (quoting *Estelle*, 429 U.S. at 106). This means the Court must always "remain flexible, especially 'when dealing with imprisoned pro se litigants . . . ." *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (quoting *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244–45 (3d Cir. 2013))).

Additionally, when construing a *pro se* complaint, the Court will "apply the relevant legal principle even when the complaint has failed to name it." *Mala*, 704 F.3d at 244. However, *pro se* litigants "'cannot flout procedural rules—they must abide by the same rules that apply to all other litigants.'" *Vogt*, 8 F.4th at 185 (quoting *Mala*, 704 F.3d at 245).

## B.    Section 1983

Section 1983 is the vehicle by which private citizens may seek redress for violations of federal constitutional rights committed by state officials. *See* 42 U.S.C. §1983. This statute states in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution of laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

*Id.* "Section 1983 is not a source of substantive rights," but is merely a means through which "to vindicate violations of federal law committed by state actors." *Pappas v. City of Lebanon*, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) (quoting *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284–85 (2002)). "To state a claim under §1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

## IV.    DISCUSSION

### A.    Section 1983 Claims

#### 1.    Against the DOC

Hunter asserts a Section 1983 due process claim against the DOC. (Doc. 1 at 1, 6.) The Court will dismiss this claim with prejudice because the DOC has Eleventh Amendment immunity and is not considered a "person" amenable to suit under Section 1983.

Regarding the Eleventh Amendment, it provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by

Citizens of another State, or by Citizens or Subjects of any Foreign State."

U.S. Const. amend. XI. This Amendment

> has been interpreted to render states—and, by extension, state agencies and departments and officials when the state is the real party in interest—generally immune from suit by private parties in federal court. Indeed, it has been recognized for over two hundred years that a state's immunity from suit in federal court is a fundamental principle of our constitutional structure that preserves, as intended by the Framers, the respect and dignity of the states and protects the ability of the states "to govern in accordance with the will of their citizens."

*Pa. Fed'n of Sportsmen's Clubs, Inc. v. Hess*, 297 F.3d 310, 323 (3d Cir. 2002) (quoting *Alden v. Maine*, 527 U.S. 706, 751 (1999)). Eleventh Amendment immunity extends to all state agencies, departments, and entities "having no existence apart from the state." *Laskaris v. Thornburgh*, 661 F.2d 23, 25 (3d Cir. 1981) (citation omitted). As such, the DOC, as an agency of the Commonwealth of Pennsylvania, is entitled to the Commonwealth's Eleventh Amendment immunity. *See* 71 P.S. §61(a) ("The executive and administrative work of this Commonwealth shall be performed by the . . . Department of Corrections . . . ."); *Downey v. Pa. Dep't of Corr.*, 968 F.3d 299, 310 (3d Cir. 2020) (explaining that "state sovereign immunity prohibit[ed]" plaintiff's Section 1983 claims against the DOC).

"[A]bsent waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court." *Kentucky v. Graham*, 473 U.S. 159, 169 (1985); *see also Lombardo v. Pennsylvania, Dep't of Pub. Welfare*, 540 F.3d 190, 194 (3d Cir. 2008) (pointing out that "[t]he immunity of States from suit in the federal courts is a fundamental aspect of state sovereignty"). The Commonwealth of Pennsylvania has not waived its Eleventh Amendment immunity. *See* 42 Pa. C.S. §8521(b) ("Nothing contained in this subchapter shall be construed to waive the immunity of the Commonwealth from suit in Federal courts guaranteed by the Eleventh Amendment to the Constitution of the United States."); *Lavia v. Pa. Dep't of Corr.*, 224 F.3d 190, 195 (3d Cir. 2000) (explaining that Pennsylvania has not waived its Eleventh Amendment immunity). In addition, Congress did not abrogate the States' Eleventh Amendment immunity by enacting Section 1983. *See Quern v. Jordan*, 440 U.S. 332, 344–45 (1979) (stating that "§1983 does not explicitly and by clear language indicate on its face an intent to sweep away the immunity of the States; nor does it have a history which focuses directly on the question of state liability and which shows that Congress considered and firmly decided to abrogate the Eleventh Amendment immunity of the States"); *see also Will*

*v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989) (stating that "Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties" (citation omitted)). Therefore, the Eleventh Amendment bars Hunter's Section 1983 claim against the DOC. *See Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993) (recognizing that under *Ex parte Young*, 209 U.S. 123 (1908), the Eleventh Amendment does not bar official-capacity claims against a state official for prospective declaratory or injunctive relief, and explaining that *Ex parte Young* "has no application in suits against the States and their agencies, which are barred regardless of the relief sought").

Additionally, for Hunter to state a plausible claim under Section 1983, he must allege that a "person" acting under the color of state law deprived him of his constitutional rights. *See Imbler v. Pachtman*, 424 U.S. 409, 417 (1976) ("'[E]very person' who acts under color of state law to deprive another of a constitutional right [is] answerable to that person in a suit for damages." (citing 42 U.S.C. §1983)). However, an administrative department of a state, such as the DOC, is not considered a "person" for purposes of Section 1983 and, thus, is not amenable to suit under this statute. *See* 71 P.S. §61(a); *see*

*also Fischer v. Cahill*, 474 F.2d 991, 992 (3d Cir. 1973) (stating that a state agency may not be sued under Section 1983 because it is not a "person" for purposes of the statute); *Foye v. Wexford Health Sources Inc.*, 675 F. App'x 210, 215 (3d Cir. 2017) (unpublished) (dismissed Section 1983 claims against the DOC and a DOC correctional institution because they were entitled to Eleventh Amendment and "are not persons subject to suit under" Section 1983). Accordingly, Hunter cannot maintain any Section 1983 claim against the DOC in this case, irrespective of the type of relief sought.

### 2. For Monetary Damages Against the Individual Defendants in Their Official Capacities

Hunter asserts Section 1983 claims against Defendants Mason, Wiederhold, and Doe for damages in their official capacities. (Doc. 1 at 1, 6.) As with Hunter's Section 1983 claim against the DOC, the Court will dismiss this claim with prejudice because these Defendants have Eleventh Amendment immunity and are not considered a "person" for purposes of claims asserted under Section 1983.

In general, official-capacity claims are indistinguishable from claims against the governmental entity that employs the official. *See Graham*, 473 U.S. at 165–66 ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'"

(quoting *Monell*, 436 U.S at 690 n.55)). Thus, Hunter's Section 1983 official-capacity claims against Mason, Wiederhold, and Doe for monetary damages are actually claims against the Commonwealth, which is immune from such claims under the Eleventh Amendment. *See Downey*, 968 F.3d at 309–10 ("Eleventh Amendment immunity bars actions for retroactive relief against state officers acting in their official capacity."); *Lavia*, 224 F.3d at 195 (stating that "[b]ecause the Commonwealth of Pennsylvania's Department of Corrections is a part of the executive department of the Commonwealth, it shares in the Commonwealth's Eleventh Amendment immunity"). Therefore, the Eleventh Amendment bars Hunter's Section 1983 official-capacity claims for monetary damages against Mason, Wiederhold, and Doe.[3] Moreover, even if the Eleventh Amendment did not apply here, Hunter's official-capacity claims are implausible because "officials acting in their official capacities" are not "persons" subject to liability under Section 1983. *Will*, 491 U.S. at 71.

---

[3] The Eleventh Amendment does not prohibit a Section 1983 plaintiff from suing "state officers for prospective injunctive and declaratory relief." *Wheeling & Lake Erie Ry. Co. v. Pub. Util. Comm'n of Pa.*, 141 F.3d 88, 91 (3d Cir. 1998) (citing, *inter alia*, *Ex parte Young*, 209 U.S. 123 (1908)).

### 3.     For Declaratory Relief

Among his requests for relief, Hunter seeks "a declaration that the acts and omissions described [in the complaint] violate his rights under the Constitution and laws of the United States." (Doc. 1 at 6.) This is an impermissible form of declaratory relief.

Declaratory relief is "prospective in nature," *CMR D.N. Corp. v. City of Philadelphia*, 703 F.3d 612, 628 (3d Cir. 2013), and therefore cannot be applied to seek "retrospective relief." *Bond v. DiClaudio*, No. 22-3010, 2023 WL 1990532, at *1 (3d Cir. Feb. 14, 2023) (unpublished). Because Hunter seeks to address actions that have already occurred, he has failed to state a viable claim for declaratory relief. *See, e.g.*, *Lewis v. Diaz-Petti*, No. 22-cv-3242, 2023 WL 3072684, at *6 (D.N.J. Apr. 21, 2023) (holding that "declaratory judgment is inappropriate solely to adjudicate past conduct. Nor is declaratory judgment meant simply to proclaim that one party is liable to another. A reading of Plaintiff's Complaint in toto clearly demonstrates these two objectives are exactly what he seeks to achieve" (brackets, citations, and internal quotation marks omitted)).

### 4. Against Mason in his Individual Capacity and for Injunctive Relief in His Official Capacity

Hunter's only factual allegation against Mason is that he "uph[eld [Hunter's] conviction." (Doc. 1 at 5.) The Court has construed this allegation as Hunter alleging that Mason was one of the officials who upheld Doe's decision finding Hunter guilty of his May 29, 2023 misconduct charge. So construed, Hunter has failed to state a plausible claim for relief against Mason.

A plaintiff asserting a Section 1983 claim must allege the personal involvement of each defendant in the alleged constitutional violation; in other words, the plaintiff must state how each defendant was involved in the events and occurrences giving rise to the claims in the operative complaint. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) ("A defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable.); *Iqbal*, 556 U.S. at 676 (explaining that "[b]ecause vicarious liability is inapplicable to . . . §1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution"). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode*, 845 F.2d at 1207.

- 18 -

Hunter's allegations against Mason, a supervisory official, are insufficient to establish his personal involvement in any alleged constitutional violation regarding Hunter's misconduct charges because he is alleged to have only been involved with reviewing Hunter's grievance appeal. "[A]lthough prisoners have a constitutional right to seek redress of grievances as part of their right of access to courts, this right is not compromised by [prison officials' failure] to address these grievances." *Booth v. King*, 346 F. Supp. 2d 751, 761 (E.D. Pa. 2004). "Access to prison grievance procedures is not a constitutionally-mandated right, and allegations of improprieties in the handling of grievances do not state a cognizable claim under [Section] 1983." *Glenn v. DelBalso*, 599 F. App'x 457, 459 (3d Cir. 2015) (unpublished); *Burnside v. Moser*, 138 F. App'x 414, 416 (3d Cir. 2005) (affirming that "[i]nmates do not have a constitutionally protected right to the prison grievance process"). Therefore, Mason's alleged role in upholding Hunter's misconduct finding as part of Hunter's grievance appeal is insufficient to establish Mason's personal involvement for purposes of a plausible Section 1983 claim. *See Simonton v. Tennis*, 437 F. App'x 60, 62 (3d Cir. 2011) (unpublished) (stating that "a prison official's secondary review of an inmate's grievance or appeal is not sufficient to demonstrate the

personal involvement required to establish the deprivation of a constitutional right"); *Brooks v. Beard*, 167 F. App'x 923, 925 (3d Cir. 2006) (unpublished) (holding that allegedly inappropriate responses by defendant prison officials and administrators to state prisoner's "later-filed grievances" were insufficient to establish the defendants' personal involvement in the underlying constitutional violations); *see also Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (evidence that prisoner sent copy of documents related to the prisoner's claim to high level prison official and official did not respond to the documents did not establish personal involvement by said official, nor did involvement of other prison officials who only reviewed and denied prisoner's grievances). Accordingly, the Court will dismiss Hunter's Section 1983 individual-capacity claim and his official-capacity claim for injunctive relief against Mason.

### 5. Against Wiederhold and Doe in Their Individual Capacities and in Their Official Capacities for Injunctive Relief

Hunter asserts Section 1983 claims for procedural due process against Wiederhold and Doe presumably because they prevented him from calling witnesses during his disciplinary hearings and subsequently found him guilty

of the misconduct charges. Once again, the Court will dismiss these claims because Hunter has failed to allege a plausible claim for relief.

Prison disciplinary proceedings only trigger procedural due process protections when the sanction imposed on the prisoner plaintiff constitutes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Here, the sanctions imposed on Hunter—"punitive segregation" for an unknown number of days and loss of his prison job—do not constitute atypical and significant hardship that would trigger procedural due process protections. *See id.* at 485–86 (holding that sanction of thirty (30) days in disciplinary confinement did not constitute atypical and significant hardship); *Iwanicki v. Pa. Dep't of Corr.*, 582 F. App'x 75, 81 (3d Cir. 2014) (unpublished) (concluding that prisoner's loss of prison job was not atypical and significant hardship); *Perry v. Lackawanna Cnty. Child. & Youth Servs.*, 345 F. App'x 723, 726 (3d Cir. 2009) (unpublished) (determining that sanctions consisting of "30 days of solitary confinement, 60 days without visiting privileges, and loss of [plaintiff's] institutional employment . . . do not qualify as an 'atypical or significant hardship' under *Sandin*").

Hunter's claim also fails to the extent he alleges that procedural due process protections were triggered because the disciplinary sanctions resulted in him being denied parole. Inmates confined in Pennsylvania do not have "a constitutionally protected liberty interest in being paroled before [their] actual release." *Fantone v. Latini*, 780 F.3d 184, 186 (3d Cir. 2015). Because the sanctions imposed on Hunter were insufficient to trigger due process protections, and Hunter lacks any liberty interest in being paroled, he has failed to plead plausible procedural due process claims against Wiederhold and Doe based on his disciplinary proceedings. Therefore, the Court will dismiss Hunter's Section 1983 individual-capacity claims and his official-capacity claims for injunctive relief against Wiederhold and Doe.

### 6.    Against    Defendants    for    an    Unconstitutional Procedure, Custom, or Policy

Hunter generally alleges that "[a]ll defendants employed an unconstitutional procedure as a matter of custom, and or [sic] policy." (Doc. 1 at 5.) While unclear, Hunter appears to be attempting to assert a municipal liability claim under *Monell*, despite not having named any municipality as a Defendant.

Under *Monell*, a plaintiff may assert a Section 1983 claim against a local government if it had a policy or custom which caused the violation of

- 22 -

their constitutional rights. *See* 436 U.S. at 694 ("We conclude, therefore, that a local government may not be sued under §1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under §1983."). Putting aside the fact that Hunter has failed to allege any facts to establish a policy, custom, or practice by Defendants which violated his constitutional rights, he has only sued a Commonwealth of Pennsylvania agency and that agency's employees. Thus, he cannot assert a *Monell* claim against them. Even if he somehow could assert a claim, he cannot plead any violation of his constitutional rights anyway. As such, the Court will dismiss any possible *Monell* claim asserted in the complaint.

## B.    State-Law Defamation Claims

With the dismissal of Hunter's Section 1983 claims against Defendants, his only remaining claims are for state-law defamation against Mason, Wiederhold, and Doe. In these situations—where a district court has dismissed all federal claims and only state-law claims remain—the district court must decide whether to decline to exercise supplemental jurisdiction

over the remaining state-law claims. *See* 28 U.S.C. §1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim ... if-- ... (3) the district court has dismissed all claims over which it has original jurisdiction ...."). As the United States Supreme Court instructs:

> Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well. Similarly, if it appears that the state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought, the state claims may be dismissed without prejudice and left for resolution to state tribunals.

*United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726–27 (1966).

Generally, "where the claim over which the district court has original jurisdiction is dismissed before trial, the district court *must* decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." *Borough of W. Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995) (emphasis added). In this case, it does not appear that any considerations of judicial economy, convenience, or fairness to the parties would justify deviating from the ordinary course of declining to exercise jurisdiction over Hunter's remaining state-law claims. Accordingly, the Court

will decline to exercise jurisdiction over Hunter's state-law defamation claims asserted in the complaint and dismiss them without prejudice. *See Kach v. Hose*, 589 F.3d 626, 650 (3d Cir. 2009) ("If a district court decides not to exercise supplemental jurisdiction and therefore dismisses state-law claims, it should do so without prejudice, as there has been no adjudication on the merits." (quoting *Figueroa v. Buccaneer Hotel Inc.*, 188 F.3d 172, 182 (3d Cir. 1999))).

### C.    Leave to Amend

Before dismissing a civil rights complaint for failure to state a claim upon which relief may be granted, a district court must permit a curative amendment unless the amendment would be inequitable or futile. *See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252 (3d Cir. 2007) ("[I]n civil rights cases district courts must offer amendment—irrespective of whether it is requested—when dismissing a case for failure to state a claim unless doing so would be inequitable or futile."); *Grayson v. Mayview St. Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002) (stating general rule that court should grant leave to amend unless doing so would be futile). Here, the Court will not grant Hunter leave to amend his Section 1983 claims because doing so would be futile.

## V.    CONCLUSION

For the foregoing reasons, the Court will grant the IFP Application, dismiss with prejudice Hunter's Section 1983 claims, and dismiss his state-law defamation claims without prejudice. An appropriate Order follows.


*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE: November 8, 2024**